# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLOS ROMAN,<br>    PLAINTIFF, | :<br>:<br>: CIVIL ACTION NO. 3:11cv1867(VLB)<br>: |
| v. | : SEPTEMBER 25, 2012<br>: |
| JOHN VELLECA, ET AL<br>    DEFENDANTS. | :<br>:<br>: |

## MEMORANDUM OF DECISION GRANTING DEFENDANTS' [DKT. #16] MOTION TO

Before the Court is the Defendants' Motion to Dismiss the complaint of the Plaintiff, Detective Carlos Roman of the New Haven Police Department, alleging that he was subjected to four counts of unlawful mistreatment in the course of his employment.  The Defendants, John Velleca ("Velleca"), Frank Limon ("Limon"), and the City of New Haven (the "City") now move to dismiss the Plaintiff's complaint on the grounds that the Plaintiff has failed to state a claim upon which relief can be granted.  In his complaint, Plaintiff alleges that "the Defendants engaged in discrimination, harassment, hostile work environment, disparate treatment of, and retaliation against" the Plaintiff in violation of his rights under the Constitution, federal law, and Connecticut state law.  In Count I of his complaint, the Plaintiff claims that Velleca's actions constitute a violation of the Plaintiff's equal protection, First Amendment, and substantive and procedural due process rights.  In Count II, the Plaintiff reasserts his Count I claims as applied to the actions of Defendant Frank Limon.  In Count III, the Plaintiff alleges that "the actions and conduct of the Defendant City of New Haven evince an official policy or custom which has caused the Plaintiff to be subject to a denial

1

of…his constitutional rights," subjecting the city to municipal liability for the claims set forth in Counts I and II.  Finally, in Count IV, the Plaintiff alleges that Defendants Velleca and Limon unlawfully and intentionally inflicted extreme emotional distress upon the Plaintiff.  The Defendants have filed a motion to dismiss counts one through four of the Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated below, the Defendants' motion is granted.

## Factual Background

Plaintiff, Carlos Roman, has been a police officer for the New Haven Police Department for approximately nineteen years and alleges that he has been a "loyal and valuable employee" with "an excellent employment record." [Dkt. #1, Compl. Count I, ¶ 10].  He now claims that the City and members of the Department subjected him to unlawful abuse on multiple occasions, and seeks relief for the allegedly ongoing mistreatment. *Id*. at ¶ 1.

### A. The Initial Altercation

In July of 2010, the Plaintiff was employed as a Major Crimes Unit Detective for the New Haven Police Department.  *Id*. at ¶¶ 11, 12.  At that time, the Department's Major Crimes Unit was undergoing a personnel change directed by Defendant then-Lieutenant John Velleca.  *Id*. at ¶¶ 7, 13.  On or around July 26, 2010, when Defendant Velleca directed the Plaintiff to bring a memorandum of the new transfers and assignments to Defendant Velleca's office, the Plaintiff chose to express the concerns he had regarding the change.  *Id*. at ¶ 12.  Although Plaintiff himself was not named on the transfer list, he was concerned that the

2

transfers would "negatively impact[] the provision of police services to the public." *Id.* at ¶ 16.

When the Plaintiff raised his concerns, however, "Defendant Velleca began yelling at Plaintiff," and informed Plaintiff "in a loud and threatening manner" that the changes had been made "'because [Velleca] said so.'" *Id.* at ¶ 13. Distressed, the Plaintiff "responded by looking downward at the floor." *Id.* at ¶ 16.  According to the Plaintiff, Defendant Velleca nevertheless continued his "threatening tirade." *Id.* at ¶ 19.  After first directing the Plaintiff to close the door "so that others would not overhear," the Defendant "instructed the Plaintiff to voice his concerns." *Id.* at ¶ 14.  The Plaintiff complied, and "spoke out on matters of public concern," by opining to Velleca that "a strong bond and trust exists between the detectives in the squad," such that "transferring in new detectives while transferring the existing detectives to other units would make working relationships difficult, thereby negatively impacting the provision of police services to the public."  *Id.* at ¶ 15.  The Plaintiff claims that Defendant then responded by violently,  repeatedly and profanely "shout[ing] at the Plaintiff, 'Get the f_ _k out!  I'm not listening to this s_ _t!  Get out!'" while clenching his fist and repeatedly pounding it against his desk.  *Id.* at ¶¶ 17, 18.  The Plaintiff asserts that, in his rage, "the veins in the Defendant Velleca's neck protruded and saliva flew from his mouth," causing the Plaintiff to fear for his safety, "convinced that the Defendant… was going to attack him." *Id.* at ¶¶ 20,21.  When Velleca then threatened to "mak[e] [Plaintiff's] life miserable," the Plaintiff sought to make clear that his concerns were for public safety and "not simply his own

assignment." *Id.* at ¶¶ 24, 25.  Accordingly, he assured Velleca that "'No matter what decisions" were made, he would "continue to come to work and give one hundred percent." *Id.* at ¶ 25.

Immediately after the Plaintiff left the office, Defendant Velleca directed that the Plaintiff be written up for voicing his concerns.  *Id.* at ¶ 36.  Yet what is more, soon after the incident, on July 27, 2010, the Plaintiff received a transfer order, which "was signed by Defendant Limon, and copied to Defendant Velleca." *Id.* at ¶ 41.  The Plaintiff alleges that Defendant Velleca "obtained the transfer of the Plaintiff to a less desirable assignment" by "making false statements about the incident to an Assistant Chief." *Id.* at ¶ 41. Plaintiff, an Hispanic officer, also claims that Defendant Velleca has a history of similar "discriminatory, harassing, abusive, and retaliatory conduct" toward minority employees and female officers. *Id.* at ¶s 5, 43.

Consequently, the Plaintiff filed a formal complaint against Velleca with his supervisors. *Id.* at ¶ 26.   He also forwarded copies of the complaint to the New Haven Police Union, his private attorney, the National Latino Peace Officers Association, and the "Commission of Human Rights." *Id.* at ¶ 26.

B.  The August 12 Incident

The Plaintiff asserts that a second episode of harassment by Defendant Velleca took place the following month, around August 12.  *Id.* at ¶ 45.  The incident began, according to the Plaintiff, when Defendant Velleca approached the Plaintiff's new desk, "stared at him," and repeatedly asked, "Do you have a problem?" *Id.*  at ¶¶ 45, 47.  When the Plaintiff remained silent, the Defendant

stated, "Yeah, I didn't think so!" and left.  *Id.* at ¶ 48.  Immediately after the incident, the Plaintiff complained to his supervisor.  At that time, accompanied by his supervisor, the Plaintiff informed Defendant Velleca that he would not tolerate the Defendant's harassment.  *Id.* at ¶ 50.  In response, Velleca again threatened the Plaintiff, telling him, "Carlos, you did not learn your lesson, but you will!" *Id.* at ¶ 51.  Once again, "after he finished berating and humiliating the Plaintiff, the Defendant Velleca ordered Plaintiff's supervisor...to write up the Plaintiff," even though he was "unable to specify a violation…upon which to discipline the Plaintiff." *Id.* at ¶¶ 69, 71.  Additionally, Defendant Velleca also "filed a written disciplinary report to the Defendant Limon, once again falsely claiming that the Plaintiff had engaged in misconduct." *Id.* at ¶ 74.

Subsequent to the August 12 incident, the Plaintiff made verbal complaints, which he later followed up with written complaints, to his supervisor, his Union representatives, and the City of New Haven. *Id.* at ¶¶ 52, 53, 72.  In his written complaints, the Plaintiff made clear that the Defendant's behavior not only "made him afraid to be in the workplace," but also "made him feel like a prisoner in his own home as well, as he…worried that Velleca [would] show up there, and threaten him and his family." *Id.* at ¶ 60.

C. Allegations of Continued Mistreatment

On August 24, 2010, Defendant Velleca again ordered a supervisor to "discipline the Plaintiff" for pretextual reasons with the motive "to further discriminate against, harass, and retaliate against the Plaintiff." *Id.* at ¶¶ 77, 78, 79.  When the matter was referred to Defendant Assistant Chief Limon, however,

Limon disregarded the Plaintiff's complaints and ignored the positive appraisal of the Plaintiff offered by his supervisor. *Id.* at ¶s 83, 84. Thus, on November 10, 2010, Defendant Limon suspended the Plaintiff for three days "on the basis of [the] false and pretextual claims" put forth by Velleca. *Id.* at ¶ 85.

Finally, after the Plaintiff filed an additional grievance about his mistreatment, on March 14, 2010, the Defendant City of New Haven acknowledged that "'some of Lt. Velleca's actions were inappropriate for a supervisor,' and that Velleca both initiated and escalated the inappropriate contact with the Plaintiff." *Id.* at ¶¶ 86,87. Nevertheless, according to the Plaintiff, "the City of New Haven failed, refused, or neglected to discipline the Defendant" or to "act to prevent further harm to the Plaintiff." *Id.* at ¶ 88. Consequently, around July 29, 2011, the Plaintiff was wrongfully excluded from routine training as a result of the Defendants' continued unlawful conduct. *Id.* at ¶ 91. Indeed, according to the Plaintiff, "the Defendant Velleca, now an Assistant Chief, continues to subject the Plaintiff to harassment." *Id.* at ¶ 90. As a result, the Plaintiff claims that he continues to suffer economic and psychological losses. *Id.* at ¶ 93. For example, on one occasion, "Velleca's conduct caused the Plaintiff to be upset and agitated," so that he was "forced to leave his workplace and to use a sick day." *Id.* at ¶ 68

For the aforementioned reasons, the Plaintiff seeks relief for the mistreatment he claims to have undergone in the course of his employment. *Id.* at ¶ 1.

**<u>Legal Standard</u>**

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

<u>Analysis</u>

**A.  Discrimination, Harassment, and Hostile Work Environment Claims**

To begin, the Plaintiff alleges that the Defendants subjected him to discrimination in the form of disparate treatment, harassment, hostile work environment, and retaliation.  An employee subjected to such unlawful treatment has a cause of action under both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA").  A Plaintiff's Title VII and CFEPA claims will not stand, however, where the Plaintiff (1) brings his complaint prematurely, (2) issues a complaint alleging inadequate factual allegations, or (3) fails to properly substantiate his claim.

First, because voluntary compliance is the "preferred means for enforcing Title VII," before resorting to the courts a Title VII Plaintiff must make preliminary attempts to resolve his dispute by filing a charge with the Equal Employment Opportunity Commission ("EEOC") or an equivalent state agency and obtaining a right-to-sue letter.  *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 771, (1983); *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006).  Similarly, this court has held that a complaint under the CFEPA cannot survive where the Plaintiff did not first file a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO").  *Spell v. Connecticut*, 602 F. Supp. 2d 387, 392 (D. Conn. 2009).

The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Second Circuit has explained that "[e]very circuit before us that has faced the question has held that a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court. *Pietras v. Bd. of Fire Com'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999) (citing *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1031 (6th Cir.1998); *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 505 (1st. Cir.1996); *Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984)).

In this case, the Plaintiff does not allege or otherwise informed the Court that he had at any time filed a complaint with the EEOC or obtained a right-to-sue letter.   The Plaintiff does, however, allege to have "forwarded a copy" of a complaint he had written to his supervisor to "the Commission of Human Rights." Nevertheless, the Plaintiff's complaint does not make clear whether the Plaintiff filed a formal complaint under Title VII or CFEPA with the CHRO.  In addition, neither plaintiff nor defendant has set forth any circumstances indicating that the failure to obtain a right to sue letter has been waived by either party.  Moreover, this Court sees no good cause to apply estoppel, equitable tolling or waiver to this requirement.  Consequently, Plaintiff's employment discrimination, retaliation

and hostile work environment claims under Title VII and CFEPA claims are barred by Plaintiff's failure to timely file a charge of discrimination with the EEOC.

Assuming arguendo that Plaintiff did timely file a charge of discrimination with the EEOC and obtained a right to sue letter, the Plaintiff's employment discrimination, retaliation and hostile work environment claims under Title VII and CFEPA cannot stand because they rest solely on legal conclusions and do not, as a matter of law, provide sufficient factual grounds to comply with the plausibility standard set forth in *Iqbal*, 129 S. Ct. at 1949.

i.     Title VII Disparate Treatment Claim

Discriminatory treatment claims under Title VII depend on the plaintiff's ability to show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the employment action give rise to an inference of discrimination.  *Adams-Martin v. CT Dept. of Dev. Services*, No.3:10-cv-00099(VLB), 2012 WL 878306, *16 (D. Conn. Mar. 14, 2012) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)).

Here, the first and second prongs of the test are satisfied because the Plaintiff is a Hispanic employee, and his complaint identifies him as a loyal employee with an excellent employment record.  In addition, Plaintiff has arguably satisfied the third prong of the test by alleging that he was demoted and was suspended for three days to survive a 12(b)(6) challenge.  However, courts have held that mere inconvenience or changes in job responsibilities do not rise to the level of materially adverse employment action.  *See Galabya v. New York*

*City Bd. of Educ.,* **202 F.3d 636, 640 (2d. Cir. 2000) (holding that a demotion may constitute a materially adverse action only when "evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices'") (quoting** *Crady v. Liberty Nat'l Bank and Trust Co.,* **993 F.2d 132, 136 (7th Cir.1993)).   Likewise courts have found that a suspension without pay only in certain circumstances can constitute an adverse employment action.** *See, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* **263 F.3d 208, 223-224 (2d Cir. 2001) (holding that one-week suspension without pay is adverse action, even if pay is later reimbursed, because plaintiff "at least suffered the loss of the use of her wages for a time");** *Page v. Connecticut Dep't of Pub. Safety, Div, of State Police,* **185 F.Supp.2d 149, 157 (D. Conn. 2002) ("In this case, plaintiff was suspended for two days without pay. Thus, she lost wages.  She was also orally counseled for three alleged incidents of unacceptable work behavior and then reprimanded in writing.  These would be sufficient to support a jury's finding that she suffered adverse employment action.");** *Cormier v. City of Meriden,* **420 F. Supp.2d 11, 21 (D. Conn. 2006) (finding that "the one-day suspension without pay, which also resulted in a one-year loss of eligibility for the crew-leader premium, and the written disciplinary letters, which were placed in plaintiff's personnel file, can be considered adverse employment actions");** *Dobrynio v. Central Hudson Gas & Electric Corp.,* **419 F.Supp.2d 557, 564-565 (S.D.N.Y. 2006) (rejecting  "as a matter of law Plaintiff's contention that the loss of one day's pay worked a substantial change in the terms and conditions of his employment . . . But being suspended for a single**

day, with no long term consequences whatever, is not an actionable adverse employment action because it is not *material.*") (emphasis in the original).

Plaintiff's claim nonetheless fails as he has not alleged any facts which plausibly establish the final prong of the analysis.   As to Defendant Velleca, the Plaintiff provides no factual grounds to provide a plausible basis for concluding that Defendant engaged in discrimination based on racial animus.  Indeed, although Plaintiff complains about Defendant Velleca's history of racism and his "bias and bigotry toward [Plaintiff] on the basis of plaintiff's race," he provides no factual allegations to substantiate the conclusion.  Plaintiff does not even attempt to show that an employee outside his protected class, who was "similarly situated" and who "engaged in comparable conduct," was treated more favorably by the Defendant.  *Ruiz v. Cnty. Of Rockland*, 609 F.3d 486, 493-4 (2d Cir. 2010) (holding that an inference of discrimination may be found where the plaintiff is treated less favorably than a similarly situated employee not in plaintiff's protected class).  What is more, the Plaintiff makes clear that Defendant Velleca's retaliation stemmed from the parties' July 26 dispute regarding personnel transfers, and not from Defendant's alleged racial prejudice.

As to Defendants Limon and the City of New Haven, the Plaintiff offers nothing more than the legal conclusion that Defendants have engaged in "invidious discrimination." Indeed, the complaint expressly states that Defendant Limon relied on false allegations, and not discriminatory prejudice, when he suspended Plaintiff for three days.  Plaintiff has therefore failed to fulfill his burden of establishing a plausible inference of discrimination.  Consequently,

Plaintiff's Title VII disparate treatment claim is dismissed on this basis as well.

ii.     **Title VII Retaliation Claim**

The Plaintiff also alleges that the Defendants exercised unlawful retaliation under Title VII.  In order to establish a retaliation claim, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 162 (2d. Cir 2010) (quoting *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir.2005)).  For the purposes of retaliation claims under Title VII, "adverse employment actions" include any "employer actions that would have been materially adverse to a reasonable employee." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

In this case, it does not appear that the Plaintiff filed a grievance with the EEOC or a proper complaint with the CHRO.  Plaintiff did, however, engage in a protected act when he filed complaints with his supervisor and forwarded them to his Union, his attorney, and the Commission.  *See Martin v. Town of Westport*, 558 F. Supp. 2d 228, 245 (D. Conn. 2008) ("[T]he filing of internal complaints of discrimination prohibited by CFEPA, or of a CHRO complaint, would constitute protected activities.").  Nevertheless, even to the extent that the Plaintiff engaged in a protected activity, Plaintiff's claim must fail.  After all, "the antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67.  In his complaint, the Plaintiff fails to demonstrate that, as a result of filing his complaints, he suffered an

adverse employment action rising to the level that a reasonable employee would have been deterred from complaining to the proper agency.  *Id.* at 68; *see also Hicks*, 593 F.3d at 168 (holding that "reassignment of job duties is not immediately actionable," nor is the contention that defendant submitted false memoranda regarding plaintiff's work performance).  For example, Plaintiff offers no factual enhancement whatsoever to support his conclusion that he "was wrongfully excluded from routine training as a result of the Defendants' continued unlawful conduct."  Thus unsubstantiated, Plaintiff's Title VII retaliation claim is also dismissed on this basis.

iii.    Title VII Hostile Work Environment Claim

Title VII also protects employees from being subjected to a discriminatorily hostile work environment.  *Adams-Martin*, 2012 WL 878306, at *34 (citing *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 (1993)).  Whether the Plaintiff's workplace is hostile under Title VII depends on the totality of the circumstances in each case; however, relevant factors may include the frequency, severity, and effect of the discriminatory conduct.  *Harris,* 510 U.S at 23.  To prevail in a hostile work environment claim, a plaintiff must show three elements: (1) that the plaintiff himself found the environment hostile, (2) that the environment would have been considered hostile to a reasonable person, and (3) the employee was subjected to the abusive environment because of his race or national origin. *Id.*

The Plaintiff complains that within the span of one month, he was subjected to two occasions of verbal abuse from Defendant Velleca, including shouting, swearing, and threats to "make [Plaintiff's] life miserable."  Plaintiff

also alleges that the Defendant ordered that Plaintiff be written up without just cause, and that Defendant submitted a false report that resulted in Plaintiff's suspension.  Yet where a plaintiff's claim is based on facially race-neutral conduct, he must set forth enough evidence indicative of discrimination to establish "a basis from which a reasonable fact-finder could infer that those incidents were infected by discriminatory animus." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). Here, despite Plaintiff's subjective view that the environment was abusive, Plaintiff has failed to allege facts plausibly demonstrating any kind of discriminatory abuse, let alone that which is so pervasive or severe "that the terms and conditions of [his] employment were thereby altered."  *Leibovitz v. N.Y. City Transit Authority*, 252 F.3d 179, 188 (2d Cir. 2001).  To be sure, "hostile work environment cases [must] exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination" to prevent the federal courts from "becom[ing] a court of personnel appeals." *Alfano*, 294 F.3d at 377.  Thus, Plaintiff's unsubstantiated claim of hostile work environment on the basis of his race is dismissed on this basis as well.

   iv.   **CFEPA Claim**

   Furthermore, an employer violates the CFEPA if he discriminates "in terms, conditions or privileges of employment because of the individual's race, color ... [or] national origin." Conn. Gen. Stat. § 46a-60(a)(1).  The Connecticut Supreme Court has held that claims of discrimination and retribution under the CFEPA are analyzed under the same model of analysis used in federal Title VII claims.

*Jackson v. Water Pollution Control Auth. of City of Bridgeport*, 278 Conn. 692, 705-06 (2006).  Therefore, for the same reasons discussed above, Plaintiff's claims under Connecticut State Law must also fail in their entirety.

B.  Equal Protection Claim

The Plaintiff also alleges in his complaint that the government violated his right to Equal Protection under the Fourteenth Amendment.  The government violates the Equal Protection Clause where it fails to treat "similarly situated people in a like manner."  *See Heusser v. Hale*, 777 F. Supp. 2d 366, 382 (D. Conn. 2011) (citing *Harlen Assocs. v. Incorporated Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir.2001)).  Where a plaintiff alleges that he was singled out for discriminatory treatment that was race-neutral on its face, however, the plaintiff must show that the defendant acted with a *purpose* to discriminate.   *Hayden v. County of Nassau*, 180 F.3d 42, 50 (2d Cir. 1999).  That is, he must show that the defendant "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' adverse effects" upon members of a protected class.  *Id.* (quoting *Personnel Administrator v. Feeney*, 442 U.S. 256, 279 (1979)).

In this case, the Plaintiff fails to allege facts demonstrative of government action that was discriminatory on its face.  At the same time, the Plaintiff also fails to create a plausible inference that Defendants acted with discriminatory purpose.  Indeed, aside from his assertion that Defendant Velleca had a history of discriminatory conduct toward minority and female employees, Plaintiff offers no grounds to support his assertion that the defendant "engaged in invidious discrimination" in this instance.  As discussed above, the facts set forth in the

complaint demonstrate that Defendant Velleca's inappropriate conduct was motivated by his disagreement with Plaintiff over the reorganization of the Major Crimes Unit rather than Plaintiff's race or ethnicity.

As for the Plaintiff's claims against Defendant Assistant Chief Limon (Count II), the Defendant cannot be held liable "'merely because he held a high position of authority,' but can be held liable only of he was personally involved in the alleged deprivation." *Back v. Hastings On Hudson Union Free School Dist.,* 365 F.3d 107, 127 (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)).  While such direct involvement may in some cases be found where the defendant exhibits "deliberate indifference" by "failing to act on information indicating that unconstitutional acts were occurring," such will only be the case where "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." *Id.* (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). Plaintiff has failed to supply a factual basis for so finding in this case. *See Id.* at 127 (finding no "deliberate indifference" where defendant's response was not "clearly unreasonable in light of known circumstances").  Indeed, Plaintiff merely alleges that Defendant Limon acted on false information in disciplining the Plaintiff.   Thus, Plaintiff's Equal Protection claim is dismissed as a matter of law.

C. First Amendment Retaliation Claim

It is well-established that a government employee who is speaking as a citizen on matters of public concern is protected from retaliation for his speech under the First Amendment.  *Garcetti v. Ceballos,* 547 U.S. 410, 419 (2006). However, speech by a public employee pursuant to the employee's official duties,

is not protected from employer discipline. *Id.* at 421. In some instances, speech may be deemed "'pursuant to 'a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer.'" *Platt v. Incorporated Village of Southampton*, 391 Fed.Appx. 62, 64 (2d Cir. 2010) (citing *Weintraub v. Bd. of Educ.,* 593 F.3d 196, 203 (2d Cir.2010)).   In any case, to survive a motion to dismiss, a plaintiff must present sufficient facts to support the plausible inference that (1) his speech was protected, (2) the plaintiff was subjected to adverse action, and (3) the speech was the cause of the adverse action.  *Scott v. Coughlin*, 344 F.3d 282, 286 (2d Cir. 2003).

In this case, the Plaintiff, a Detective in the Major Crimes Unit, does not have First Amendment protection for his speech where he spoke out in protest against the manner in which the Unit was being operated.  *See Garcetti*, 547 U.S. at 418 (holding that, insofar as the speech "has some potential to affect the entity's operations," the government "has broader discretion to restrict speech"). Plaintiff alleges that he "spoke out on matters of public concern" because he was worried that the personnel transfers would put the public at risk.  In support of his allegation, he claims that he was not on the transfer list at the time of his speech, and thus was clearly concerned with public safety rather than his own position.  Even if the Court draws all reasonable inferences from such allegations which are entitled to an assumption of truth, it is clear that Plaintiff's alleged speech was made in his capacity as a police officer and not as a citizen on a matter of public concern.  Consequently, Plaintiff's speech is not protected as a

matter of law.  *See Platt,* 391 Fed.Appx at 64 (finding no protected speech where plaintiff raised concerns regarding the adverse impact of an inter-department relationship on public safety because "we cannot say that a police officer speaking to a public official about his concerns over public safety issues is speaking in his capacity as a citizen, as opposed to his capacity as a police officer"); *Carter v. Incorporated Village of Ocean Beach*, 415 Fed. Appx. 290, 291 (2d Cir. 2011) ("Plaintiffs' allegations establish no more than that they reported what they believed to be misconduct by a supervisor up the chain of command—misconduct they knew of only by virtue of their jobs as police officers and which they reported as 'part-and-parcel of [their] concerns about [their] ability to properly execute [their] duties.'") (quoting *Weintraub*, 593 F.3d at 203); *Pisano v. Mancone*, No. 08 Civ. 1045(KMW), 2011 WL 1097554, at *13 (S.D.N.Y. Mar. 18, 2011) (holding that speech regarding lack of departmental rules or policies, that chief of police was issuing allegedly unlawful orders, that another police officer was not qualified and that the chief of police had directed improper alteration of payroll records "concerned the internal working of the police department, as well as issues of public safety" and that since such speech was in furtherance of the plaintiff's duties as a police sergeant it was part and parcel of his concerns about his abilities to execute that duty and therefore not protected under the First Amendment); *Frisenda v. Incorporated Village of Malverne*, 775 F.Supp.2d 486, 509 (E.D.N.Y. 2011) (Fact that officer's memorandum to police chief discussing failure by members of the department to follow procedure in responding to emergency situations was written by the officer at his home did not "magically

transform his speech as public employee into speech as private citizen, as would support his First Amendment retaliation claims" as the speech was "made in connection with, and during course of, lieutenant's job duties.").

The Plaintiff's alleged speech concerning the departmental transfers and its "public safety" impact undeniably concerned the internal workings of the police department and was clearly in furtherance of Plaintiff's duties as a Detective in that it was "part and parcel of his concerns about his ability to properly execute" those duties. *Weintraub*, 593 F.3d at 203. The fact that Plaintiff was not one of the officers on the transfer list did not magically transform his speech as a public employee into speech as private citizen. Thus, even insofar as the Plaintiff was concerned about the adverse effects of the Unit transfers on public safety, he expressed his concerns in the capacity of a police officer when he spoke to the Lieutenant in his office at the Lieutenant's request. Therefore, the Plaintiff has not plausibly stated a First Amendment Retaliation claim and his claim is accordingly dismissed.

D. Substantive Due Process Claim

Additionally, the Plaintiff claims that the government deprived him of his right to substantive due process in the course of his employment. Government conduct violates a plaintiff's Fourteenth Amendment right to substantive due process only where it is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998). Constitutional violations do not, in and of themselves, "shock the conscience" for the purposes of substantive due process. *Velez v.*

*Levy*, 401 F.3d 75, 94 (2d Cir. 2005).  Therefore, where factual allegations shock the conscience only insofar as they constitute specific constitutional violations, plaintiffs may not seek redress under substantive due process.  *See Id.* (dismissing substantive due process claims where allegations amounted to First Amendment and Equal Protection violations).  Consequently, a substantive due process claim will not survive a motion to dismiss where it is either (1) subsumed by other constitutional claims, or (2) does not amount to a substantive due process violation as a matter of law.

First, "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment...must be the guide for analyzing' such a claim," and plaintiffs may not resort to the more general alternative category of substantive due process.  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Under this rule, substantive due process claims must be dismissed where they are merely duplicative of claims explicitly protected under other constitutional sources.  *See Kia P. v. McIntyre,* 235 F.3d 749, 758 (2d Cir. 2000) (analyzing detention claims under the Fourth Amendment rather than substantive due process).

The Plaintiff's claim that he was wrongly retaliated against after exercising his right to free speech must be analyzed under the First Amendment and not substantive due process.  *See Velez*, 401 F.3d at 94 (denying to analyze plaintiff's First Amendment claim under a substantive due process rubric where plaintiff alleged that she was removed from the school board and defamed as a result of

her speech).  Moreover, the Plaintiff's claim that the government engaged in invidious discrimination against him merely duplicates his Equal Protection claims, as the Plaintiff does not allege any egregious facts beyond those comfortably subsumed by the alternative clause.  *See Hogan v. State of Conn. Judicial Branch*, 220 F.Supp.2d 111, 124 (D. Conn. 2002) (finding no substantive due process claim where plaintiff claimed that he was terminated on the basis of race since "the equal protection clause provides explicit textual protection against race-motivated state action").  For these reasons, the Plaintiff's substantive due process claims are dismissed.

The Plaintiff's substantive due process claims must also be dismissed because they do not allege facts that are so arbitrary or egregious as to "shock the conscience" as a matter of law. *See County of Sacramento*, 523 U.S. at 845 ("[O]nly the most egregious official conduct" is arbitrary or egregious as a matter of law.); *see also Collins v. Harker Heights,* 503 U.S. 115,129 (1992) (holding that "particularly in the area of public employment," a claim "analogous to a fairly typical tort claim under state law" does not amount to a substantive due process violation).  While no precise test can determine whether government conduct "shocks the conscience," the query necessarily depends on "the state of mind of the government actor and the context in which the action was taken."  *See O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005) (holding that intent to cause harm may in some cases constitute a violation, while "deliberate indifference" only "shocks the conscience "in situations where the government owes a special duty of care to those in its charge").

The Plaintiff alleges that Defendant Velleca fabricated incidents of misconduct in order to impugn the Plaintiff's reputation, causing him to be reprimanded in writing, transferred, and suspended.  Yet however wrongful such alleged conduct may be, it does not plausibly state conduct that amounts to a substantive due process claim as a matter of law. *See Hogan,* 220 F. Supp. 2d. at 123 (dismissing a substantive due process claim where defendant allegedly made him a scapegoat and had him wrongfully terminated on that basis).  Nor do Plaintiff's allegations that Defendant created a hostile environment by on one occasion yelling, swearing at, and on another occasion threatening the Plaintiff amount to a violation of substantive due process. *See Richards v. Connecticut Dept. of Corr.,* 349 F. Supp. 2d 278, 293 (D. Conn. 2004) (holding that, while "unprofessional and unto plausible necessary," the government-employer's conduct did not shock the conscience where defendant yelled, swore at, and berated plaintiff, who was then placed on leave, transferred, and reprimanded in writing).

As to Defendant Limon (Count II), the Plaintiff does not allege that the Defendant was aware of Defendant Velleca's allegedly unlawful behavior, but rather, asserts only that Limon wrongly credited Defendant Velleca's claims over the Plaintiff's.  Yet even had Limon been aware of Velleca's acts, the Defendant's alleged failure to act does not constitute a basis for the Plaintiff's claim.  *See Goldfarb v. Town of W. Hartford*, 474 F.Supp.2d 356, 371 (D. Conn. 2007) (rejecting plaintiff's substantive due process claim where defendant allegedly failed to respond to plaintiff's complaints or prevent further harassment to plaintiff).

Indeed, while "deliberate indifference" to a supervisee's wrongful behavior may "shock the conscience "in situations where the government owes a special duty of care to those in its charge," such as a government detainee, this is not such a case. *O'Connor*, 426 F.3d at 203.  Therefore, because the Plaintiff does not, as a matter of law, allege facts that "shock the conscience," his substantive due process claim is dismissed.

### E.  Procedural Due Process Claim

Additionally, the state acts in violation of the Fourteenth Amendment when it deprives an individual of property without due process of law.  *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 541 (1985). "In analyzing plaintiffs' procedural due process claims, the court must first determine (1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." *Sealed v. Sealed,* 332 F.3d 51, 55 (2d Cir.2003).  As to the first inquiry, depriving an individual of his livelihood may in some cases constitute a property depravation requiring due process for the purposes of the Fourteenth Amendment. *Loudermill*, 470 U.S. at 543.  As to the second, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972).  Nevertheless, three factors may be balanced to determine what process is due in a given situation:  ""First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the

Government's interest." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In this case, the Plaintiff fails to adequately allege a procedural due process violation because he makes no reference to facts providing a basis for the claim.  The Plaintiff alleges that he was suspended for three days and arbitrarily subjected to punishment without appropriate opportunity for adequate review.  Yet the Plaintiff fails to elucidate his point by describing what process he was due. *See DeLoreto V. Ment,* 944 F. Supp. 1023, 1034 (D. Conn. 1996) (dismissing an employment depravation claim where plaintiffs failed to present allegations as to "what procedural due process rights they [were] claiming entitlement"). Indeed, in this case, Plaintiff does allege that he took advantage of various grievance procedures, suggesting that he was not, in fact, deprived of adequate process as a matter of law.  *See Gilbert v. Homar*, 520 U.S. 924, 932 (1997) (holding that no pre-depravation hearing was required where an employee faces only a temporary suspension without pay and not termination).  After all, a plaintiff does not have a due process claim merely because he is unhappy with the results of the process he is provided.  *See Martin v. Town of Westport,* 329 F. Supp. 2d 318, 335 (D. Conn. 2004) (holding that adequate process had been provided where plaintiff took advantage of collective bargaining agreement procedures after being terminated, and merely disagreed with the results).  For the foregoing reasons, the Plaintiffs procedural due process claim is dismissed as a matter of law.

F.  Municipal Liability Claim

In regard to Count III of Plaintiff's claim, to establish municipal liability for the conduct of city employees, "a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy" that caused the violation. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 122 (2d Cir. 1991).  In some cases, such an unlawful policy may be inferred where "the municipality had notice of but repeatedly failed to make any meaningful investigation" into allegations that its agents had violated constitutional rights. *Id.*

In Count III, Plaintiff alleges that Defendant City of New Haven displayed "deliberate indifference" to the violation of Plaintiff's constitutional rights.  Such unlawful indifference, Plaintiff claims, evinces "a municipal policy or custom" that makes Defendant City of New Haven liable in this case.  Plaintiff fails, however, to provide a factual basis for his claim.  The fact that Defendant City of New Haven "acknowledged that 'some of Lt. Velleca's actions were inappropriate for a supervisor'" and failed to act does not provide a plausible inference that Defendant deliberately and repeatedly ignored allegations of conduct that plausibly amounted to a constitutional violation.  Nor does the threadbare claim demonstrate that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).   Plaintiff's allegations against the City are replete with conclusions devoid of any factual enhancement that would render such conclusions plausible under *Iqbal*.  Absent any factual allegations supporting the plausible inference of "a direct causal link between the municipal

action and the deprivation of federal rights," the Plaintiff's claim must be dismissed.

G. Intentional Infliction of Emotional Distress Claim

Liability for intentional infliction of emotional distress depends on the plaintiff's ability to establish four elements: (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress would result from his conduct; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff's distress was severe. *Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 194 (D. Conn. 2000) (quoting *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986)). To constitute "extreme and outrageous conduct," the action must be "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society," and causes "mental distress of a very serious kind." *Id.*

In Count I, Plaintiff claims that Defendant Velleca verbally threatened him, making him fear for his safety both at work and at home. He also alleges that Defendant issued false negative reports about Plaintiff and caused him to be unfairly disciplined. Plaintiff asserts that, as a result of the psychological trauma caused by Defendant, he was forced to leave work and take a sick day. Yet however ill-founded and improper Defendant's alleged actions may have been, they do not, as a matter of law, arise to level of egregious conduct required to substantiate a claim of intentional infliction of emotional distress. *See Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (holding that "insults,

verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress"); *Armstrong v. Chrysler Financial Corp. and Roger Pinneault,* No. 3:97CV1557, 1998 WL 342045, at *5 (D.Conn. May 14, 1998) ("Mere insults, indignities, annoyances, or conduct that displays bad manners or results in hurt feelings, is insufficient" and therefore holding that Plaintiff failed to plausibly state claim for intentional infliction of emotional distress where employer criticized, insulted, demeaned, and embarrassed plaintiff on a daily basis.  Indeed, even unfounded discipline does not amount to extreme and outrageous behavior when conducted in an employment setting.  *See Hill v. Pinkerton Sec. & Investigation Services, Inc.*,  977 F. Supp. 148, 160 (D. Conn. 1997) (finding no claim where plaintiff was disciplined, reprimanded, and transferred); *see also Barbuto v. William Backus Hosp.*, 1995 WL 235068, *8 (Conn. Super.) (April 13, 1995, *Hendel, J.*) (dismissing a claim where plaintiff suffered a two day suspension).

Additionally, while Plaintiff alleges that Defendant Limon ignored his complaints, failure to prevent another employee from harassing a complainant cannot properly be considered intentional infliction of emotional distress as a matter of law. *See Abate v. Circuit-Wise, Inc.,* 130 F.Supp.2d 341, 348 (D. Conn. 2001) (finding that failure to prevent supervisor from sexually harassing plaintiff-employee was not extreme and outrageous conduct).  Furthermore, while the Plaintiff alleges that Defendant Limon participated in transferring and suspending the Plaintiff for fabricated reasons, as discussed above, unfair discipline, even to

the extent of termination of employment, does not amount to extreme and outrageous conduct. *See Venterina v. Cummings & Lockwood*, 117 F.Supp.2d 114, 120 (D. Conn 1999) (holding that false accusations and wrongful termination is insufficient to sustain a claim).  Thus, unsubstantiated, Plaintiff's Count IV claims against Defendant Velleca and Defendant Limon are dismissed.

Lastly, the City correctly asserts that under Connecticut law, a municipality cannot be liable for the intentional and/or malicious conduct of its employees or agents.  Indeed, the Connecticut Supreme Court has held that under Conn. Gen. Stat. §52-55n, a municipality could not be held liable for the intentional infliction of emotional distress by one its employees.   *Pane v. City of Danbury*, 267 Conn. 669, 686 (2004).

<u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint in its entirety is GRANTED.  The Clerk is directed to close the case.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: September 25, 2012

29